BENTON, APPELLEE, *v.* UNITED INSURANCE CO. OF AMERICA, APPELLANT.[*]

*Motion to certify the record overruled, March 9, 1960.

(No. 8590—Decided June 8, 1959.)

*Messrs. McIlwain, Rogoff & Wood*, for appellee.
*Mr. Henry H. Chatfield*, for appellant.

O'CONNELL, J. This is an appeal from a judgment of the Common Pleas Court of Hamilton County awarding to the plaintiff, appellee herein, the sum of $994.84. The action was based on a claim arising out of a change of beneficiary in an insurance policy, in favor of the plaintiff.

The provision in the change-of-beneficiary clause in the insurance contract involved requires the receipt of the written request for such change of beneficiary at the home office of the company and the policy for indorsement. This policy, Y-5829961, was on the life of Ollie Benton, who died at Bethesda Hospital about 6:30 a. m., on Friday, April 26, 1957. Named as beneficiary was May Ruhe. A change of beneficiaries was executed on April 25, 1957, by the insured in favor of his wife, Dorsie Benton, the plaintiff. His signature was witnessed by his daughter, Erie Ann Benton, who mailed the executed beneficiary-change form to the company on April 25, 1957, between 6:30 and 7:00 p. m. However, the envelope containing this form was not postmarked until 12:30 p. m., April 26, 1957, about six hours after the insured's death. On the morning of April 26, 1957, Lorine Elam, daughter of Ollie Benton, called the insurance

company office. Likewise, Ann Benton, daughter of Ollie Benton, had telephoned the insurance company before the change of beneficiary had been effected. It may be assumed that the subject of these calls was the matter of the change of beneficiary.

The testimony further reveals that on Friday morning, April 26, 1957, Erie Ann Benton went to the insured's store to get the insurance policy and that she gave it to her sister (Lorine Elam); that her sister took it to the funeral home and showed it to Mr. Miller; and that they "explained the circumstances." Then Erie Ann Benton testified as follows:

"Q. Tell the jury who Mr. Miller is? A. That is the man taking care of the funeral home and we showed the policy to him and explained the circumstances and my sister brought it home with her until a few days later and then she taken it and gave it to Mr. Miller and he was supposed to take care of that and mail it into the insurance company."

Later on, Mr. Miller turned the policy over to May Ruhe, to whom the insurance company paid the amount due under the insurance contract in the sum of $994.84. Previously, May Ruhe, the original beneficiary, had sent the policy and other papers required to perfect the claim to the defendant, appellant herein.

On September 9, 1957, the plaintiff filed an action in the Common Pleas Court, and obtained a judgment in the sum of $994.84.

The question to be decided in this case is whether there was compliance with the provision of the insurance policy with reference to change of beneficiary. There is no doubt that the insured executed a change-of-beneficiary form. An effort was made by the defendant to show that the insurance company did not receive this form until after the death of the insured. However, the undisputed testimony of Erie Ann Benton is that she mailed the form on April 25, 1957, between 6:30 and 7:00 p. m. Therefore, there has been a compliance with the more essential requirement; the sending and the receipt of the application for a change of beneficiary. The intention of the insured was thus clearly established.

And so the courts have decided that, in application for change of beneficiary, the intent of the insured is most import-

ant. In *Finnerty* v. *Cook*, 118 Colo., 310, 195 P. (2d), 973, in paragraph two of the syllabus it is held that:

"Equity will declare a substitution of beneficiaries under a life insurance policy when, and only when, the intention of the insured to make a substitution is established beyond question, and he has done everything possible under the circumstances to effectuate that intention."

It is true that the company received the insurance policy only in an indirect manner and through the original beneficiary, whose interests were opposed to those of the new beneficiary. But efforts had been made to fulfill the obligations by the daughters of the deceased who called the insurance company and delivered the policy to the undertaker. He, they apparently thought, was the proper recipient, as they clearly presumed that the proceeds would be used in payment of the funeral bill. Certainly we can assume that his delivering the policy to May Ruhe was not authorized by any of the family of the deceased, but that it was so delivered contrary to their instructions, express or implied, or without reference to their interests. In any event, the company eventually had in its possession the application for the change of beneficiary and the insurance policy. And so it seems to this court that, under the circumstances, the filing of proper pleadings asking the court for instructions as to which of the two parties was entitled to the proceeds of the insurance policy would have been the reasonable course of action for the insurance company to have followed.

Now at the outset attention should be called to the fact that the question whether a change of beneficiary has been effected is generally considered one difficult of solution, and it has been frequently stated that the decisions are in hopeless conflict on this point. (19 A. L. R. [2d], 14.) There are those in which strict compliance with the provisions are required, and others which are satisfied with so-called substantial compliance. Perhaps the distinction between strict and substantial compliance is so slight that it can be ignored. (19 A. L. R. [2d], 14.) However, according to 29 American Jurisprudence, 759, Section 1680, it is said that, by the great weight of authority, "a change of beneficiary can be effected without a strict or complete compliance with the conditions of the policy regarding notice and

indorsement. The courts upholding this view usually state the general proposition that substantial compliance by the insured with the conditions respecting a change of beneficiary is sufficient.'' There is considerable authority for the proposition that if an insured sent his notice for a change of beneficiary with the policy for indorsement to the insurer, but died before the insurer could act thereon, the case will come within the rule that substantial compliance with the policy provisions respecting a change of beneficiary is sufficient.

And so, in *State Mutual Life Assurance Co.* v. *Besset*, 41 R. I., 54, 102 A., 727, L. R. A. 1918C, 961, it was held that:

''An insured may change a beneficiary under an insurance policy * * * by doing all that is required of him to effect the change or all that is possible for him to do although certain formal or ministerial acts of the officers of the insurer are not performed before the death of the insured. The question in a particular case will be ordinarily as to whether the acts required but unperformed were essential parts of the contract or were ministerial or formal details.''

Therefore, it might be said that the sending of an insurance policy was not an essential part of the contract, but that it was rather a ''formal detail.'' After all, the insurance companies have in their files duplicates of the policy of the insured, or memoranda identifying such policies.

Since in our case the policy did not accompany the application, a reference to the rule in the matter is proper and necessary. The following is the rule as reported in 19 A. L. R. (2d), 16:

''* * * Where the failure of the insured to deliver the policy to the insurer for indorsement is due to the fact that the policy is lost, destroyed, or otherwise inaccessible to the insured, the attempted change will be held effective, while where the failure to deliver the policy is due to the insured's negligence or remains unexplained, the attempted change will, as a general rule, be held not to have been effected.''

Now in the case at bar, the failure certainly was not ''due to negligence'' or ''matters unexplained,'' but rather it was due to the inaccessibility of the policy to the insured. After all, a man about to die is hardly in a position to obtain an insurance

policy located elsewhere and deliver that policy to an insurance company. And there are many cases which hold that as long as the insured does everything he is able to do under the circumstances, the fact that all the requirements of the contract have not been performed will not affect adversely his intention to change the beneficiary. So, in *Fornera's Estate*, 139 Pa. Supp., 252, 11 A. (2d), 512, the court said: "There is a well defined exception to the above general rule [to effect a change of beneficiary the mode prescribed by the policy must be followed], which gives effect to the intention of the insured to change the named beneficiary in a policy without strict compliance with its terms, where the insured has done everything he could to make the change, even though the new beneficiary has not been designated in the manner prescribed in the policy * * *." That case followed the ruling in *Riley* v. *Wirth*, 313 Pa., 362, 169 A., 139, in paragraph one of the syllabus of which occurs the following language: "Where a policy of life insurance provides that a change of beneficiary be made by the written direction of the insured filed with the company, which shall be charged with notice of such change only when endorsed on the policy, the execution by the insured of a written direction of change of beneficiary, accompanied by every reasonable effort under the circumstances to change the beneficiary, constitutes a valid change of beneficiary under the provisions of such policy though the policy is not delivered to the company and the change endorsed thereon."

And in *Metropolitan Life Ins. Co.* v. *Dinzik*, 141 N. J. Eq., 336, 57 A. (2d), 247, the court held that: "Under certain circumstances * * * the insured would be excused from strict compliance with the provisions of the policy if he were able to convince the court that he had done everything within his power to effect a change and had made every reasonable effort to comply with the conditions provided therein for a change of beneficiary."

In *Barrett* v. *Barrett*, 173 Ga., 375, 160 S. E., 399, 78 A. L. R., 962, there was an element present (sickness), as in the case at bar. The holding in that case was: "* * * there are pleaded good reasons why the policy was not forwarded to the company for its endorsement thereon of the change of beneficiary. It was explained on behalf of the insured that the policy was in a

safety-deposit box in New York; the insured was sick there and could not get the policy out of the box." Likewise, in *Bradley* v. *United States*, 143 F. (2d), 573, paragraph three of the headnotes reads as follows: "Where insured has manifested desire and intent to change beneficiary and has done everything reasonably within his power to accomplish that purpose, leaving only ministerial acts to be performed by insurer, courts of equity will deem as done that which ought to be done, thereby giving effect to insured's intent." And, in *Claffy* v. *Forbes*, 280 F., 233, the following language is simple, forceful, and expressive of the general position of the courts in all those cases: "Form, formality and legal technicality must give way to common sense and remedial justice when all doubt is removed as to the intent of the deceased soldier."

The following cases: (1) *Bachrach* v. *Herrup*, 128 Conn., 74, 20 A. (2d), 395, wherein it is stated in the first paragraph of the syllabus: "The general rule is that a change of beneficiary in an insurance policy can only be effected by following the mode prescribed by the policy, however, clear the intention to make the change may be. To this rule there is a well recognized exception and a change is effective when the insured has done all in his power to comply therewith but has failed because the policy is beyond his control"; (2) *Johnson* v. *White* (C. C. A., 8), 39 F. (2d), 793, in which the court says that: "The intention, desire, and purpose of this soldier should, if it can reasonably be done, be given effect by the courts, and substance, rather than form, should be the basis of the decisions of courts of equity. The clearly expressed intention and purpose of the deceased to have his wife named as the beneficiary in this insurance should control, and should not be thwarted by the fact that all the formalities for making this purpose effective may not have been complied with"; (3) *Mitchell* v. *United States*, 165 F. (2d), 758, 2 A. L. R. (2d), 484, paragraph two of A. L. R. (2d), headnotes reading: "The manifest intent of the insured to change the beneficiary of war risk insurance is given effect when he has done everything reasonably within his power to accomplish his purpose, leaving only ministerial acts to be performed by the insurer"; and (4) *Kelley* v. *Kelley*, 14 N. Y. Supp. (2d), 545, in which it is stated in paragraph one of the headnotes

that: "If insured is unable to comply literally with requirements of a group policy relating to change of beneficiary, because of physical disability, loss of policy, or because it has been wrongfully taken or withheld from him, equity will, notwithstanding nonsurrender, recognize such attempted change as a valid one when it appears that the insured has done all that he could do to comply with the requirements"; make clear that by a great weight of the authorities an application for a change of beneficiary will be effective if the insured has done all that he could do under the circumstances to comply with the terms of the policy in this regard, and if his intention in the matter is manifest.

It might be fitting to conclude with the following citation from 19 A. L. R. (2d), 15:

"The applicable rule is usually stated in the form that on the principle that equity regards as done that which ought to be done the courts will give effect to the intention of the insured by holding that a change of beneficiary has been accomplished where he has done all that he could to comply with the provisions of the policy."

In the opinion of this court, therefore, the insured, Ollie Benton, made clear his intention to apply for a change of beneficiary in favor of his wife, Dorsie Benton, and did all that he could do, under the circumstances, to comply with the provision in the insurance contract regarding such an application. Furthermore, the insurance company eventually had in its possession both the application for the change of beneficiary and the policy. Dorsie Benton, the substitute beneficiary, was accordingly entitled to the proceeds of the policy.

We find no error in the record prejudicial to appellant.

The judgment of the Court of Common Pleas is, therefore, affirmed.

*Judgment affirmed.*

MATTHEWS, P. J., concurs.