DECISION AND JUDGMENT ENTRY
Jack I. Hope appeals the Highland County Court of Common Pleas' judgment against him on his claims against Russell and Leslie Thomas and Advanta Leasing Corp., asserting that the judgment is against the manifest weight of the evidence. Because we find that some competent, credible evidence supports the trier of fact's verdict, we disagree and affirm the judgment of the trial court.
 I.
This case concerns a failed joint business venture between Hope, Ralph Anderson, and Hospitality Management Inc. ("HMI"). We summarized the circumstances of this venture in Hope v. Hospitality Management Inc. (Mar. 10, 2000), Highland App. No. 99CA6, unreported ("Hope I") as follows:
 In 1983, [Hope] and * * * Anderson began buying various buildings in downtown Hillsboro, Ohio, including the "Parker House" restaurant and bar.[1]
It was their initial intent to help revitalize the area, get the buildings on the "National Register" and "help downtown Hillsboro retain its character." When those plans failed to materialize, however, they fell back on renting out space in the buildings and operating the restaurant and bar. Several "operators" were brought in to manage these facilities but none of them was particularly successful.
 [Russell Thomas] had previous experience operating restaurants and bars in Cincinnati, Ohio, and wanted to open a business in Hillsboro. Thomas met appellant in 1993 and the two * * * of them reached an agreement whereby Thomas would manage the Parker House. Thomas subsequently incorporated [HMI] as the vehicle by which to run the operation. On July 27, 1993, [Hope], Anderson and HMI entered into a contract which called for HMI to manage the "Hillsboro facilities" in exchange for a monthly management fee and a percentage of the net profit from restaurant operations. The parties also entered into several other collateral arrangements including (1) a $45,000 capital improvement loan[2] and (2) a lease on computer and phone equipment from Advanta.[3] HMI took control of the Parker House but the operation quickly became mired in debt. Hope terminated the management contract after less than three * * * months.
 [Hope] commenced the action below on December 21, 1993, alleging inter alia breach of contract, negligence, fraud, slander and conversion on the part of both HMI and Russell Thomas and seeking in excess of $250,000 in compensatory and punitive damages from both of them. HMI and Thomas responded with an answer denying liability and a counterclaim and third party complaint, against Anderson, alleging among other things breach of contract, unjust enrichment and slander. They asked for damages in excess of $800,000. * * * Anderson was later dismissed as a party to these proceedings.
The trial court held a trial and was the trier of fact. The trial court filed a decision and judgment entry finding that each side "used very poor business judgment" in entering and executing the management contract. The trial court's judgment essentially left the parties as they were and dismissed most of Hope's claims against HMI and Thomas, as well as Thomas' counterclaims. Hope appealed.
In Hope I, we determined that the trial court's judgment was not a final appealable order because it found that HMI would be liable to Hope for any amount of the $45,000 loan that was not used to improve the structure or equipment or for start up expenses, but did not determine the amount.
On remand, the trial court held a short evidentiary hearing, at which Hope testified. Hope testified that he had no evidence about how HMI expended the $45,000 loan, but suspected that they did not use it wisely. Hope presented no documentation or direct evidence about how HMI used the $45,000 loan proceeds. The trial court found that Hope did not meet his burden of proof in showing that HMI improperly used the $45,000 loan proceeds and entered judgment for HMI on this issue.
Hope again appealed and asserted the following assignments of error:
 I. The judgment of the trial court is against the manifest weight of the evidence.
 II. The trial court erred in failing to establish a judgment for the revolving loan money given by [Hope] to Appellee.
 II.
In his first assignment of error, Hope argues that the trial court's judgment is against the manifest weight of the evidence. In his argument, he focuses on two main issues: (1) the personal liability of Russell Thomas and (2) Hope's contract with Advanta for the lease of a computer.
A reviewing court will not reverse a judgment as being against themanifest weight of the evidence when the judgment is supported by some competent, credible evidence going to all the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. When conducting its review, an appellate court must make every reasonable presumption in favor of the trier of fact's findings of fact.Myers v. Garson (1993), 66 Ohio St.3d 610, 614; Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
A corporation is a legal entity unto itself, separate and apart from the natural persons composing it. Belvedere Condominium Unit Owners'Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 287. This legal fiction facilitates business transactions for both the corporation and those who do business with it. Id., citing State ex rel. Atty. Gen. v.Standard Oil Co. (1892), 49 Ohio St. 137, paragraph one of the syllabus. When the corporate form is used to subvert the intent and policy of this legal fiction, it may be disregarded. Dirksing v. Blue Chip ArchitecturalProducts, Inc. (1994), 100 Ohio App.3d 213, 226. The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation if:
 (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.
Belvedere at paragraph three of the syllabus.
After a thorough review of the record, we find that some competent, credible evidence supports the trial court's decision not to disregard HMI's corporate form or hold Russell Thomas personally liable. At the trial, Hope testified that when he drew up the management contract, he did not realize that there was a difference between Thomas and HMI, yet consistently referred to "HMI" in the contract rather than the individual shareholders of HMI. Thomas testified that HMI is incorporated under Ohio law, filed articles of incorporation, and adopted a code of regulations. Thomas also testified that he attended a meeting of the HMI shareholders and directors where the officers of the corporation were elected. Hope presented no evidence that HMI had no separate mind, will, or existence of its own. He simply argues that he did not distinguish between HMI and Thomas when deciding to enter into a contract with HMI. Thus, Hope did not meet his burden of proving that HMI's corporate form should be disregarded.
Next, Hope argues that Thomas should be held personally liable for his "misappropriation, failure to pay taxes, failure to pay wages, engaging in services not authorized, and making false representations to cover his tracks." However, these actions, even if "wrongful" were all taken by HMI and Hope failed to prove that HMI's corporate form should be disregarded. Thus, we find that some, competent credible evidence supports the trial court's finding that Russell Thomas is not personally liable for the debts of HMI.
Next, Hope focuses his argument on his contract with Advanta. Hope signed a contract to lease computer and phone equipment for use in the restaurant and bar.
We presume that the language of a contract between competent persons accurately reflects their intentions. Fairway Manor, Inc. v. Bd. ofCommrs. of Summit Cty. (1988), 36 Ohio St.3d 85; Kelly v. Medical LifeIns. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. When the terms of a contract are unambiguous, courts look to the plain language of the document and interpret it as a matter of law. Latina v.Woodpath Development Co. (1991), 57 Ohio St.3d 212, 214; Alexander v.Buckeye Pipeline Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus.
Hope initially argues that Thomas is liable for any claim that is successfully lodged against Hope regarding the computer and phone system lease from Advanta; however, Hope presented no legal basis for his assertion that Thomas should be liable. Hope signed the lease, which obligated him to make the lease payments. Thus, we reject this argument.
Next, Hope asserts that Cornerstone, Advanta's leasing agent, told him that he would incur no personal liability. In the absence of fraud or mutual mistake, a party who executes a written contract cannot say that he or she was ignorant of its contents and thus escape liability. McAdamsv. McAdams (1909), 80 Ohio St. 232. A signature on a contract is evidence that the minds of the parties met on the terms of the contract as executed; however, this evidence, or the inference drawn from the execution of the contract, can be rebutted. Parklawn Manor, Inc. v.Jennings-Lawrence Co. (1962), 110 Ohio App. 151. Here, Hope signed the contract, which clearly obligated him to make the payments on the equipment. However, the weight to be assigned the evidence and the credibility of the witnesses are both issues for the trier of fact. SeeState v. Hill (1996), 75 Ohio St.3d 195, 205; State v. Rojas (1992),64 Ohio St.3d 131, 139; State v. DeHass (1968), 10 Ohio St.2d 230, paragraph one of the syllabus. The court below was free to believe all, part or none of the testimony of each witness who appeared before it, including Hope's testimony concerning verbal assurances from Cornerstone. See State v. Nichols (1993), 85 Ohio App.3d 65, 76; Statev. Harriston (1989), 63 Ohio App.3d 58, 63. Thus, the trial court was free to reject Hope's testimony and accept the presumption of the written contract. Accordingly, we reject this argument.
Next, Hope implies that 15 U.S.C. § 1601[4] required that Advanta provide Hope with a disclosure statement in order for the financing arrangement of the lease to be enforceable. However, 15 U.S.C. § 1601et seq. do not apply to "credit transactions involving extensions of credit primarily for business * * * purposes * * *." 15 U.S.C. § 1603. Because Hope leased the equipment for use in the restaurant, which was a business, the contract was for a transaction involving an extension of credit for a business purpose. Thus, we reject Hope's argument.
Next, Hope argues that he rescinded the contract by returning the goods and should not be held liable for the financing charges and liquidated damages. We turn to the language of the contract. The contract provided for sixty rental payments of one hundred twenty-five dollars and eighty-two cents to be made monthly. The lease also provides that "THE LEASE CANNOT BE CANCELLED BY YOU AT ANY TIME FOR ANY REASON" and that "YOUR DUTY TO MAKE THE PAYMENTS IS UNCONDITIONAL DESPITE EQUIPMENT FAILURE, DAMAGE, LOSS OR ANY OTHER PROBLEM." There is no provision for rescinding the contract by returning the equipment and Hope points to no legal authority that would have allowed him to rescind the contract by simply returning the equipment. Because the contract does not provide for a right to rescind the contract upon return of the equipment, we reject Hope's argument.
In sum, we find that the trial court's initial judgment is supported by some, competent credible evidence and reject all of Hope's arguments in support of his first assignment of error. Accordingly, we overrule his first assignment of error.
 III.
In his second assignment of error, Hope argues that the trial court erred on remand by finding that Hope failed to prove that HMI used any of the $45,000 loan for purposes other than improving the structure or equipment, or for start-up expenses. We again review the trial court's decision under a manifest weight of the evidence standard. Thus, we will not reverse the judgment if the judgment is supported by some competent, credible evidence going to all the essential elements of the case. C.E.Morris Co. at the syllabus.
On remand, the trial court held a short evidentiary hearing, at which Hope testified. Hope testified that he had no evidence about how HMI expended the $45,000 loan, but suspected that they did not use it wisely. Hope presented no documentation or direct evidence about how HMI used the $45,000 loan proceeds. The trial court found that Hope did not meet his burden of proof in showing that HMI improperly used the $45,000 loan proceeds and entered judgment for HMI on this issue.
At the original trial, Thomas testified that HMI paid over fifty thousand dollars for renovations. Thomas denied putting twenty thousand dollars of the $45,000 loan into his personal accounts. He testified that HMI used the $45,000 loan for continued renovations, payroll and training. Thomas also testified that the $45,000 loan was not enough to cover all the expenses for the start-up of the restaurant.
After a thorough review of the record, we find that the trial court's decision that Hope did not meet his burden of proof in showing that HMI improperly used the $45,000 loan proceeds is supported by some competent, credible evidence. Thomas testified that the costs of renovation exceeded the $45,000 loan. He also testified that he did not transfer twenty thousand dollars of the loan proceeds to his personal account as Hope asserted. Hope failed to present any evidence, other than his suspicions, that the loan proceeds were used for anything other than for start-up costs, including renovation and payroll. Accordingly, we overrule Hope's second assignment of error.
 IV.
In sum, we overrule both of Hope's assignments of error and affirm the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Abele, P.J. and Evans, J.: Concur in Judgment and Opinion.
[1] The nature of the business relationship between [Hope] and * * *Anderson is not entirely clear to us but the record suggests that it wasconducted as a partnership/joint venture with [Hope] operating as theprincipal business partner and * * * Anderson serving as a more silentpartner. The record also indicates that [Hope] purchased only theequipment and personal property located inside the buildings whereas * * *Anderson purchased the actual buildings themselves. [Hope] then ran thebusinesses on behalf of * * * Anderson and himself.
[2] The $ 45,000 loan was structured as a loan from the City ofHillsboro Revolving Loan Fund to Anderson who in turn bought from [Hope]the restaurant equipment located in the Parker House. [Hope] then loanedthe money to HMI which agreed to repayment of the funds.
[3] [Hope] signed the lease with Advanta for the phone and computerequipment rather than HMI.
[4] We note that 15 U.S.C. § 1601 requires nothing, it is merelya statement of congressional findings and declaration of purpose.However, we assume arguendo that another section requires such adisclosure.